UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN KRUGMAN,

    Plaintiff,

v.                                          Case No. 1:04-CV-343
                                            Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

                                        /

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI).[1]

Plaintiff was born on May 1, 1956 and completed the 11th grade (AR 66, 336-37).[2] Plaintiff stated that he became disabled on February 2, 2001 (AR 66). He had previous employment as a welder and general laborer (AR 103). Plaintiff identified his disabling condition as diabetes and muscle deterioration (AR 92). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on November 13, 2003 (AR 14-22). This decision, which was later approved by the

---

[1] The federal court's standard of review for supplemental security income cases "mirrors" the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991).

[2] Citations to the administrative record will be referenced as (AR "page #").

Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can

2

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. *Id.* (citing 20 C.F.R. §§ 404.1520(b) and 416.920(b)(2000)). Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." *Id.* (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)(2000)). Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled. *Abbott*, 905 F.2d at 923.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001). The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the

evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. Following the five steps, the ALJ initially found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability (AR 21). Second, the ALJ found that he suffered from severe impairments of insulin dependent diabetes mellitus, peripheral neuropathy, tachycardia, gastroparesis, hypothyroidism and non-severe psoriasis (AR 16, 21). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 21). The ALJ decided at the fourth step that plaintiff had the residual functional capacity:

> for a restricted range of light work. He can, on occasion, lift and/or carry 20 pounds, frequently 10 pounds, sit, stand and walk 6 hours in an 8-hour day, however, he would need a sit/stand option, and has the ability to push, pull 20 pounds. He needs to avoid heights, dangerous machinery and uneven surfaces. He cannot engage in production rate, or fine manipulation.

(AR 21). The ALJ further concluded that plaintiff was unable to perform his past relevant work (AR 21).

At the fifth step, the ALJ determined that plaintiff was capable of performing a range of light work (AR 21). Specifically, the ALJ found that an individual with plaintiff's limitations could perform the following jobs in Michigan: general office clerk (1,400 jobs); information clerk (700 jobs); and cashier (2,200 jobs) (AR 21). The ALJ found that plaintiff's capacity for light work "is substantially intact and has not been compromised by any nonexertional limitations" (AR 21).

4

The ALJ also found plaintiff's allegations regarding his limitations were not totally credible (AR 21). Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 21-22).

### III. ANALYSIS

Plaintiff contends that "[t]he ALJ erred in rejecting limitations established by plaintiff's testimony and by other evidence." In his brief, plaintiff sets forth two separate arguments. First, that the ALJ failed to properly evaluate plaintiff's credibility. Second, that the ALJ failed to include certain restrictions in the hypothetical question posed to the vocational expert.

#### A. Credibility issues

Plaintiff contends that the ALJ improperly rejected his reports of flatulence, frequent hypoglycemic episodes and need to use the toilet 10 to 12 times a day, all of which were corroborated in the medical records. Plaintiff's Brief at 6, 12. An ALJ's credibility determinations are accorded deference and not lightly discarded. *See Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993). It is the ALJ's function to resolve conflicts in the evidence and determine issues of credibility. *See Siterlet v. Secretary of Health and Human Servs.*, 823 F. 2d 918, 920 (6th Cir. 1987) (per curiam); *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). *See also Tyra v. Secretary of Health and Human Servs.*, 896 F.2d 1024, 1030 (6th Cir. 1990) (ALJ may dismiss claimant's allegations of disabling symptomatology as implausible if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict).

5

### 1.     Hypoglycemic episodes and compliance issues

Plaintiff testified that he suffers 5-6 hypoglycemic episodes per week and that he compliant with his diabetic treatment regimen (AR 19, 344-47). In his decision, the ALJ cryptically addressed these claims, stating that plaintiff "denies ever being non-compliant with his treatment, despite contrary indications in the record" (AR 19). Plaintiff's compliance with his prescribed treatment is relevant to the disability determination. As a general rule, an impairment that can be remedied by treatment with reasonable effort and safety cannot support a finding of disability. *Johnson v. Secretary of Health and Human Services*, 794 F.2d 1106, 1111 (6th Cir. 1984); 20 C.F.R. § 404.1530(a) (in order to get benefits, the claimant must follow the treatment prescribed by the claimant's physician). *See, e.g., Raney v. Barnhart*, 396 F.3d 1007, 1011(8th Cir. 2005) (diabetic claimant's non-compliance with dietary regime and medication is inconsistent with an allegation of disability).

In the present case, the ALJ raised the issue of plaintiff's non-compliance with his prescribed treatment, but did not fully address it. It is unclear whether the ALJ rejected plaintiff's claims of 5 to 6 hypoglycemic episodes per week or whether the ALJ found plaintiff non-compliant with his prescribed treatment. For example, treatment records of Christian Moher, M.D., from December 2002 indicate that plaintiff reported that his sugars have been "out of control," that he was taking insulin 3 to 4 times a day, but not eating a regular diet or a regular amount of food (AR 227-28). While it appears that plaintiff was not taking his insulin properly, his medical records indicate that it may have been a misunderstanding on his part rather than a refusal to follow his prescribed treatment (AR 227-28).

It is unnecessary for the ALJ to address every piece of medical evidence. *See Heston*, 245 F.3d at 534-35 (ALJ's failure to discuss a treating doctor's report was harmless error where the decision was supported by record as a whole). Nevertheless, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). Here, the court cannot follow the ALJ's analysis of the evidence with respect to the limitations posed by plaintiff's diabetes. Under these circumstances, the ALJ's decision must be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should evaluate the effect of plaintiff's diabetes on his ability to perform work-related activities, including, but not limited to, the frequency of his hypoglycemic episodes and his compliance with his prescribed treatment.

### 2. Flatulence and frequent toilet usage

Plaintiff testified that he could physically perform the job as an information clerk in a building lobby, but that due to his near constant flatulence he did not think that he would be hired (AR 19, 340-41). Plaintiff points out that his flatulence and need to visit the toilet 10 to 12 times a day are the result of his severe impairment of gastroparesis[3] (AR 342). The ALJ rejected plaintiff's claim regarding the frequency of his toilet use (AR 19). In reaching this determination, the ALJ relied on the sworn statement of Dr. Moher, who testified that plaintiff's gastroparesis "can cause people to use the restroom unexpectedly" and that plaintiff "has had a few episodes where he has had to urgently get to the restroom" (AR 19, 315-16). Although the ALJ did not make a specific finding with respect to plaintiff's flatulence, the hypothetical question posed to the vocational expert

---

[3] "Gastroparesis" is defined as "paralysis of the stomach." *Dorland's Illustrated Medical Dictionary* (28th Ed.) at 682.

assumed that the hypothetical individual "has near constant flatulence" (AR 350).  With respect to the flatulence issue, the vocational expert testified that while plaintiff's flatulence would not affect his ability to perform work-related activities of the clerk and cashier jobs, it may affect the duration of his employment at those positions (AR 351-53).

Plaintiff was diagnosed with acute diarrhea in June 2001 (AR 254), but denied having diarrhea in July 2001 (AR 247, 249, 251).  On January 31, 2002, plaintiff reported to Dr. Kristopher L. Brenner that he suffered from diarrhea for three months, with three to ten bowel movements a day (AR 242-43). There is no mention of diarrhea in a consultative examination performed by J. David Faichney, M.D. at the Center for Diabetes and Endocrinology in January 2003 (AR 223-24).  In February and March 2003 plaintiff complained of gas and heartburn (AR 220, 279, 282).  In May 2003, Mary Freund Wilson, a nurse practitioner, indicated that plaintiff had significant diabetic gastroparesis (AR 273).  A gastric emptying scan of plaintiff's stomach performed in June 2003 revealed severe gastroparesis (AR 286). The medical record includes objective evidence that plaintiff has suffered from periodic diarrhea and flatulence.  Such evidence tends to support plaintiff's claim that he requires frequent toilet usage.  However, other than plaintiff's self-report to Dr. Brenner that he had three to 10 bowel movements a day for three months in early 2002, no objective evidence in the record supports plaintiff's claim that he continues to need to use the toilet 10 to 12 times a day. Contradictions exist with respect to plaintiff's testimony and the medical records.  *See Walters*, 127 F.3d at 531.  Accordingly, the ALJ could properly reject or discount plaintiff's claim that he needed frequent toilet usage.

8

### B.     Hypothetical question

Finally, plaintiff contends that the ALJ failed to incorporate the following two limitations in his hypothetical question posed to the vocational expert (VE): plaintiff's need to test his blood four times daily and plaintiff's need to eat frequent meals during the day. Dr. Faichney stated in a letter that due to plaintiff's difficulty in achieving glycemic control and for safety reasons, he needed to test his blood sugars four times daily as well as an additional blood sugar check at 3:00 a.m. three times a week (AR 216). Dr. Moher stated that due to plaintiff's gastroparesis, he needed to have meals at regular times and small meals throughout the day (AR 324). The ALJ did not incorporate any of these limitations in his hypothetical questions posed to the VE (AR 350-51).

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question which accurately portrays the claimant's physical and mental impairments. *Id.* However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

The medical evidence indicates that plaintiff required daily blood sugar testing and frequent meals throughout the day. However, the ALJ did not address these limitations in either the hypothetical questions posed to the VE or in his residual functional capacity determination. As the

9

court previously discussed, the VE identified 4,300 clerk and cashier jobs that plaintiff could perform. The additional limitations of daily blood sugar testing and frequent meal breaks could reduce the number of jobs that plaintiff could perform. Accordingly, on remand, the Commissioner should evaluate the extent of these additional limitations and the impact of the limitations, if any, on the 4,300 jobs identified by the VE.

**IV. CONCLUSION**

The ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner shall (1) evaluate the effect of plaintiff's diabetes including, but not limited to, the frequency of his hypoglycemic episodes and his compliance or non-compliance with the prescribed treatment, on plaintiff's ability to perform work-related activities, and (2) evaluate how plaintiff's daily blood sugar testing and frequent meal breaks affect his ability to perform the 4,300 jobs identified by the VE. A judgment order consistent with this opinion will be issued contemporaneously herewith.


Dated: September 16, 2005      /s/ Hugh W. Brenneman, Jr.
                               Hugh W. Brenneman, Jr.
                               United States Magistrate Judge